## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DOMINION COVE POINT LNG, L.P. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. AW-07-1243 |
| | ) | |
| 1.9240 ACRES OF LAND MORE OR | ) | |
| LESS IN CHARLES COUNTY, | ) | |
| MARYLAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Dominion Cove Point LNG, L.P., (Plaintiff), is a natural gas company seeking condemnation of easements in order to construct a natural gas pipeline. Defendant[1] is the owner of the property Plaintiff seeks to condemn. On July 2, 2007, Plaintiff filed a Motion for Partial Summary Judgment and for Possession of Easements (Paper No. 6). On July 20, 2007, Defendant Jackson[2] filed an Opposition to and Request for Denial of Plaintiff's Motion for Partial Summary Judgment and for Possession of Easements (Paper No. 10). On August 2, 2007, Plaintiff filed its Reply (Paper No. 12). No hearing is deemed necessary, and thus Defendant Jackson's request that her case be heard by a judge and jury[3] is **DENIED**. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment and for Possession of Easements will be granted.

---

[1] There are two named Defendants: (a) 1.9240 Acres of Land More or Less in Charles County, Maryland and (b) Cloria A. Jackson.

[2] Defendant Jackson is not represented by counsel in this litigation.

[3] "I respectfully request to exercise my constitutional rights with a judge and jury to hear all of the facts of this case." Mem. Supp. Def.'s Opp'n ("Def.'s Opp'n"), at 18. This Court is deciding *only* whether Plaintiff may obtain immediate possession of the easements.

## BACKGROUND

The following facts are either undisputed or are construed in the light most favorable to Defendant.[4]  Plaintiff is an interstate natural gas company as defined by § 2(a) of the Natural Gas Act, 15 U.S.C. § 717 *et seq.*  As such, Plaintiff is qualified to construct, own, operate and maintain pipelines to transmit natural gas and its by-products.  Defendant Cloria A. Jackson is the record owner of real property consisting of 49.55 acres, more or less, in the 9th Election District of Charles County, Maryland.  The property is described in a deed dated October 23, 2002 and recorded in the land records of Charles County, Maryland, in Liber 3756, Folio 341.  This property is further identified as follows: Tax Account ID 09-09-006826, Map 17, Grid 24, Parcel 46.  Defendant Jackson admits being the record owner as described by Plaintiff.  *See* Compl. ¶ 4; Answer ¶ 4.

Plaintiff owns a liquefied natural gas ("LNG") import facility located in Lusby, Maryland (the "Cove Point LNG Facility").  Plaintiff also operates a natural gas pipeline extending from the Cove Point LNG Facility to Marshall Hall in Charles County, Maryland, ("the existing pipeline"). Paper No. 6, Ex. 1 (Mordan Decl. ¶ 1).

On April 15, 2005, two Dominion companies, Plaintiff and Dominion Transmission, Inc. ("DTI") filed three separate but related certificate applications with the Federal Energy Regulatory

---

[4] *Pro Se* Defendant Jackson filed an Answer to the Complaint (Paper No. 5) and an Amended Answer to Complaint in Condemnation (Paper No. 9).  No affidavits or declarations, depositions or answers to interrogatories are attached to Defendant Jackson's opposition.  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Between her Answer and Amended Answer, Defendant Jackson admitted one paragraph (Paragraph 4) and admitted another paragraph with certain restrictions (Paragraph 10).  For the remaining paragraphs Defendant Jackson responded in one of three ways: (1) denied, (2) asserted she was without knowledge or information sufficient to form a belief as to the truth of the averments, or (3) claimed the averments contain no factual allegations and thus no answer is required.  *See* Paper Nos. 5, 9.  The only permissible evidence this Court may consider, pursuant to Federal Rule of Civil Procedure 56, are the declarations of David L. Mordan, Jr., P.E. and Larry Sommerville filed in support of Plaintiff's motion as well as the pleadings.  Fed. R. Civ. P. 56 ( c).

Commission ("FERC").  These three applications collectively comprise the "Cove Point Expansion Project."  The purpose of this project "is to allow the importation of LNG and to transport these new, additional, and vital supplies of natural gas to consumers throughout the eastern United States." *Id.*, Ex. 1 (Mordan Decl. ¶ 2).

Of the three FERC applications filed, one concerns the expansion of the Cove Point LNG Facility (FERC Docket No. CP05-130).  The other application filed by Plaintiff concerns an approximately 48 miles of 36" diameter natural gas pipeline No. TL-532 extending from the import terminal at Cove Point to Marshall Hall in Charles County, Maryland, on the east side of the Potomac River (FERC Docket No. CP05-132).  This pipeline is the subject of the eminent domain proceedings in this case.  The third application by DTI has no bearing on this litigation.  *Id.*, Ex. 1 (Mordan Decl. ¶¶ 3-4).

After the three applications were extensively reviewed by FERC and numerous federal, state and local agencies, on June 16, 2006, FERC approved the Cove Point Expansion Project by issuing certificates of public convenience and necessity to Plaintiff and DTI.  FERC set a deadline of June 15, 2009 for the completion of all construction activities.  *Id.*, Ex. 1 (Mordan Decl. ¶ 5).

The pipeline installation project impacts two hundred eighty-five (285) properties in Charles, Calvert and Prince George's Counties, Maryland.  Due to inclement weather and Maryland's environmental restrictions, the pipeline construction season is relatively short, roughly mid June to October.  Plaintiff intends to start construction of certain segments of the TL-532 pipeline by June of 2007.  Plaintiff plans to construct approximately 10 miles of the 48 miles of pipeline during 2007.  Plaintiff must be ready to construct the remainder of the pipeline (approximately 38 miles) across the remaining properties beginning in June of 2008 in order to complete all construction activities

during the 2008 construction season.  *Id.*, Ex. 1 (Mordan Decl. ¶¶ 6-8.)

Plaintiff has hired a pipeline contractor, and in accordance with the contract, Plaintiff must "provide its contractor with access to the entire right of way for the TL-532 pipeline across all affected properties by June 2008.  If [Plaintiff] is unable to do so, then [Plaintiff] is likely to suffer negative financial ramifications for failing to comply with its contractual obligations."  *Id.*, Ex. 1 (Mordan Decl. ¶ 11).  Plaintiff cannot begin to construct the pipeline until Plaintiff acquires certain permanent right-of-way and temporary construction easements over Defendant Jackson's property which are necessary for constructing, maintaining, operating, altering, testing, replacing and repairing the pipeline.  Defendant Jackson shall retain the right to use her property in any manner subject to the temporary and permanent easements which preclude Defendant Jackson from interfering with Plaintiff's use and enjoyment of rights.  Plaintiff has been unable to obtain rights to the easements by contract.  The parties are unable to agree on the compensation to be paid.  Plaintiff requests the right for immediate possession of the easements for the purpose of constructing the pipeline and, pursuant to the authority granted to Plaintiff by section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), seeks to take by eminent domain those easements.

## APPLICABLE LAW

The Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h), grants gas companies the power of eminent domain.  *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 821 (4th Cir.), *cert. denied*, 543 U.S. 978 (2004).  A gas company must first obtain a certificate of public convenience and necessity from FERC.  *Id.* at 818.  The application to FERC must contain, among other information, (1) a description of the proposed pipeline project, (2) a statement of the facts showing why the project is required, and (3) the estimated beginning and completion date of the project.  15

U.S.C. § 717f(d); 18 C.F.R. § 157.6(b).  Notice of the application is filed in the Federal Register, 18 C.F.R. § 157.9, public comment and protest is permitted, *id.* § 157.10, and FERC conducts a public hearing on the application, *id.* § 157.11.  "As part of its evaluation FERC must also investigate the environmental consequences of the proposed project and issue an environmental impact statement." *East Tennessee*, 361 F.3d at 818; *see* 42 U.S.C. § 4332.  After the evaluation, FERC issues a certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity[.]"  15 U.S.C. § 717f(e).  FERC also specifies a date for the completion of construction and the start of service.  18 C.F.R. § 157.20(b).  The certificate may include any terms and conditions that FERC deems "required by the public convenience and necessity." *Id.* § 157.20.  Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise "the right of eminent domain" over any lands needed for the project.  15 U.S.C. § 717f(h).

The NGA provides that "[w]hen any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States. . . ."  15 U.S.C. § 717f(h).  "A special rule, [Federal Rule of Civil Procedure] 71A, governs the procedure in a condemnation action." *East Tennessee*, 361 F.3d at 821.  To commence the condemnation, the certificate holder must file a complaint which sets forth the authority for the taking, the use for which the property is being taken, the identity of the property, and the interest to be acquired.  Fed. R. Civ. P. 71A(c)(2).  The action then proceeds in due course to the determination of just compensation for the owner of the land.  Fed. R. Civ. P. 71A(h).  After the determination and payment of just compensation, the condemning authority can

take possession of the property. *East Tennessee*, 361 F.3d at 821.

In this case Plaintiff seeks possession before the determination and payment of compensation. The Constitution does not prohibit a condemnor from obtaining possession of property before compensation is paid, and neither the NGA nor Rule 71A addresses this issue. *East Tennessee*, 361 F.3d at 821-24. However, Rule 71A provides that the other Federal Rules of Civil Procedure apply to any matter not covered by Rule 71A. *See* Fed. R. Civ. P. 71A(a). As a result, Rule 65(a)'s provision for preliminary injunctions applies to condemnation cases. "[A] gas company with condemnation power under the NGA may apply under <u>Rule 65(a)</u> for a preliminary injunction awarding immediate possession." *East Tennessee*, 361 F.3d at 824. Thus, once the Court determines that the complainant has a right to take the easement, it may then consider a request for a preliminary injunction granting immediate possession. *Id.* at 825.

In deciding whether to grant a preliminary injunction, the Court should consider (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir. 1977). "[T]he [gas] company must demonstrate that it will suffer irreparable harm without immediate possession, and the company's harm must be weighed against any harm to the landowner." *East Tennessee*, 361 F.3d at 825 (citation omitted). Finally, the gas company must provide security for reasonably adequate and certain payment of compensation. *Id.* at 826; *see also* Fed. R. Civ. P. 71A(j) ("[t]he plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain[.]"). The Fourth Circuit concluded that these safeguards adequately protect landowners in cases where immediate possession may be

granted.  *East Tennessee*, 361 F.3d at 826.

## ANALYSIS

A.      *Plaintiff is authorized to condemn the property.*

The NGA provides that:

> When any holder of a certificate of public convenience and necessity
> cannot acquire by contract, or is unable to agree with the owner of
> property to the compensation to be paid for, the necessary right-of-
> way to construct, operate, and maintain a pipe line or pipe lines for
> the transportation of natural gas, . . . it may acquire the same by the
> exercise of the right of eminent domain in the district court of the
> United States for the district in which such property may be located. . . .

15 U.S.C. § 717f(h).

In her Amended Answer Ms. Jackson contends the certificates of public convenience and

necessity have not been properly executed by FERC.  "The approval is still subject to environmental

conditions and modifications, including stop work authority."  Am. Answer ¶ 9.  These assertions

by Ms. Jackson are not by affidavits, depositions, answers to interrogatories or admissions on file

showing a genuine issue for trial.  "[A]n adverse party may not rest upon the mere allegations . . .

of the adverse party's pleading. . . ."  Fed. R. Civ. P. 56(e).

In her Opposition, Ms. Jackson asserts "the certificate appears to be unsigned and there is

no seal."  Mem. Supp. Def.'s Opp'n ("Def.'s Opp'n."), at 11.  Exhibit 2 to the Complaint is the

"Order Issuing Certificates and Granting Section 3 Authority" from FERC to Plaintiff and DTI.  At

the bottom of page 73 of the Order are the word "seal" in parenthesis and the signature block of

"Magalie R. Salas, Secretary."  No actual seal is affixed to the Order nor does Magalie R. Salas'

signature appear over the signature block.  The Court infers Ms. Jackson is suggesting these

omissions indicate the certificates are not legal.  Besides failing to present any affidavits,

depositions, answers to interrogatories or admissions on file supporting her insinuation, a review of the Order at FERC's elibrary (http://www.ferc.gov/docs-filing/elibrary.asp) verifies the authenticity of Exhibit 2.  As found through FERC's elibrary, the "Order Issuing Certificates and Granting Section 3 Authority" to Plaintiff and DTI neither contains an affixed seal nor the signature of Magalie R. Salas over the signature block.

A challenge to the legality of a FERC certificate cannot be considered by a federal district court.  Unless a person applies for a rehearing within thirty days after FERC issues an order, 15 U.S.C. § 717r(a), only the courts of appeals have authority to review a FERC certificate of public convenience and necessity.  *See* 15 U.S.C. § 717r(b) ("Any party to a proceeding . . . aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business . . . by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.").  Ms. Jackson may not collaterally attack the validity of the June 16, 2006 FERC order in a subsequent proceeding, whether in state or federal court.  *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 262 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990).

Third, Ms. Jackson claims the certificate for the pipeline does not authorize access roads.

> There is nothing in the Dominion application about an access road on the Woodville Road property.  Access roads were not a part of the original letters in 2004, 2005, or 2006.  I believe they first appeared in correspondence in 2007, two years after Dominion submitted the application for the certificates. . . . Dominion is suppose[d] to get owner permission for access roads and I have not provided it.  An access road in the manner *described by* Dominion cuts almost through the center of the 49.5 acre parcel and would impact another

19 acres of land.  Dominion's offer only addresses approximately 1.9
acres of land.

Def.'s Opp'n, at 9-10. (citations omitted).

In its Reply Plaintiff characterizes as incorrect Ms. Jackson's assertion that an access road,

specifically, Access Road S2-AR-1, was not part of Plaintiff's application to FERC.  Pl.'s Reply,

at 6.  "As part of the Pipeline Application, Dominion filed alignment sheets depicting the location

of the Pipeline, facilities, and all proposed access roads.[5]  Plaintiff's submissions to the FERC

specifically included Access Road S2-AR-1, which is located on Defendants' property."  *Id.*

Besides its inclusion in the Pipeline Application, Plaintiff asserts Access Road S2-AR-1 was

approved by FERC and is part of the Certificate.[6]  *Id.* at 7.

As early as December 6, 2004, Larry Sommerville,[7] on behalf of Plaintiff, sent a letter to Ms.

Jackson seeking her permission to complete survey work concerning a proposed pipeline.  Paper No.

10, Ex. 5, at 1.  Ms. Jackson expressed opposition to Plaintiff's TL-532 pipeline loop in an April 12,

---

[5] Plaintiff failed to attach an affidavit or declaration to the Reply attesting to these facts.  The Court, *sua sponte*, retrieved the April 15, 2005 application from FERC's website (the elibrary).  The Court is unable to locate, based on the public portion of this application, the alignment sheets depicting all proposed access roads including Access Road S2-AR-1.

[6] Plaintiff failed to identify the numbered paragraph in the "Order Issuing Certificates and Granting Section 3 Authority" referring to Access Road S2-AR-1.  The Court, *sua sponte*, scanned the 92 page FERC Order and found no reference to this Access Road.  The Court found one reference to an access road — paragraph 17, page 81 — which states in pertinent part, "Dominion shall <u>not</u> use access road AR-1 for construction and operation of its TL-492 EXT3 Pipeline, unless it can provide justification as to why the construction of the new access road is necessary."  TL-492 EXT3 is a pipeline that will parallel an existing pipeline from Wetzel County, West Virginia to Greene County, Pennsylvania.  *See* Compl., Ex. 2 (Order Issuing Certificates and Granting Section 3 Authority), at 12.  The pipeline involved in this litigation is TL-532.

[7] An employee of Universal Field Services, Inc. ("Universal") who has been engaged in the business of right-of-way acquisitions for almost 30 years involving more than 100 projects.  Plaintiff retained Universal to assist Plaintiff in providing land acquisition services as Plaintiff's agent for the Cove Point Expansion Project.  Paper No. 6, Ex. 2 (Sommerville Decl. ¶¶ 1-2).

2005 letter addressed to FERC.[8]  Further, in the June 16, 2006 FERC Order issuing certificates, Ms.

Jackson is one of the twenty-three parties who filed a timely motion to intervene when the notice

of applications by Plaintiff and DTI was published in the *Federal Register* on May 5, 2005.  *See*

Compl., Ex. 2 (Order Issuing Certificates and Granting Section 3 Authority) ("FERC Order"), at 16

(¶ 37), 74.

According to Mr. Sommerville, on or about January 29, 2007, Plaintiff's agent mailed to Ms.

Jackson "a color-coded plat of Owner's property and *a map of the lot in response to Owner's prior*

*questions regarding the location of the access road*."  Paper No. 6, Ex. 2 (Sommerville Decl. ¶ 15)

(emphasis added).  The last page of Exhibit 5 to Ms. Jackson's Opposition is a black-and-white plat

depicting the proposed 36" diameter TL-532 pipeline crossing Ms. Jackson's property.  Access Road

AR-1 is also depicted on this plat.  Ms. Jackson's comments about the impact of the proposed access

road do not appear to be an exaggeration.[9]  This plat was prepared by MSES Consultants, Inc. on

August 10, 2005.

Ms. Jackson has failed to provide any evidence, in accordance with Rule 56, supporting her

assertions that the FERC certificate does not authorize access roads or that Plaintiff must obtain Ms.

Jackson's permission for the access road.  According to Mr. Sommerville's unopposed declaration,

on February 1, 2007, "Dominion's agent and Owner discussed the location of the Easements, the

land needed for the new pipeline, and *the location of the access road*."  *Id.*, Ex. 2 (Sommerville

---

[8] *See* "Memo dated 4/21/05 requesting that the comments from Cloria Jackson be placed in the public file for Dominion Cove Point LNG LP's proposed Cove Point Expansion Project under CP05-132 et al." *available at* http://www.ferc.gov/docs-filing/elibrary.asp.

[9] "An access road in the manner *described by* Dominion cuts almost through the center of the 49.5 acre parcel and would impact another 19 acres of land.  Dominion's offer only addresses approximately 1.9 acres of land."  Def.'s Opp'n, at 10.

Decl. ¶ 16) (emphasis added).  In its Complaint Plaintiff clearly identifies the easements it seeks to construct and maintain the pipeline on Ms. Jackson's property: (a) one temporary right-of-way easement (0.2704 acres) and (b) two permanent easements consisting of a permanent pipeline right-of-way easement (0.4670 acres) and an access road (1.1866 acres).  Compl. ¶ 14.  Ms. Jackson argues, "[t]here was never a period to protest the access roads.  The access roads requests were sent by Dominion in 2007 and they require more land than the actual pipeline."  Def.'s Opp'n, at 12. FERC has certified that Ms. Jackson's property is necessary for Plaintiff's pipeline.  This Court has no authority to reexamine FERC's determination.

The Court thus finds it is undisputed that Plaintiff holds certificates of public convenience and necessity from FERC and, specifically, the certificate pertaining to the pipeline, the subject of this condemnation proceeding.  *See* FERC Order.  Plaintiff provided Ms. Jackson with a written offer to purchase the easements and pay for timber.   After Ms. Jackson proclaimed she was "insulted" by Plaintiff's offer, Plaintiff commissioned an appraisal which valued the easements at a lower amount.  Paper No. 6, Ex. 2 (Sommerville Decl. ¶¶ 11, 13).  Despite this lower value, Plaintiff stood by its original higher offer to purchase the easements and pay for timber.  Finding Plaintiff's offer deficient in several areas, Ms. Jackson proposed to lease the easements for 99 years at a minimum rate of one dollar per square foot per month.  *Id.*, Ex. 2 (Sommerville Decl. ¶ 22). Based on Mr. Sommerville's unopposed declaration and despite Ms. Jackson's Answer denying paragraph 18[10] of the Complaint, it is readily apparent to this Court that Plaintiff and Ms. Jackson failed to agree upon compensation or that Plaintiff was unable to acquire the necessary easements

---

[10] "Dominion has negotiated with the Owner in good faith and made bona fide efforts to acquire the necessary easements by agreement but has been unable to obtain such rights by contract or to agree on the compensation to be paid."

by agreement.  Thus, in accordance with § 7(h) of the NGA, Plaintiff is entitled to condemn the property.

B.      *Plaintiff is entitled to immediate possession.*

        1.      *The likelihood of irreparable harm to Plaintiff.*

Plaintiff's Project Manager, David L. Mordan, Jr., outlined the necessity of beginning the construction of the remainder of the pipeline across all other properties in June of 2008. Construction during the months of November through February is generally expensive and impractical due to inclement weather.  Maryland's environmental restrictions further curtail the construction season by prohibiting "constructing across intermittent streams during the period from March 1 through June 15."  Paper No. 6, Ex. 1 (Mordan Decl. ¶ 7).  The combination of the limitations caused by weather and Maryland's environmental restrictions essentially prevent any construction during the winter and spring of 2009.  "Constructing [a] certain portion of the pipeline in 2007 and being ready to begin construction on all remaining properties at the start of the pipeline construction season in June of 2008 will reduce both the risk and the impact of unusually severe weather."  *Id.*, Ex. 1 (Mordan Decl. ¶ 10).  Thus, for Plaintiff to comply with the FERC deadline of June 15, 2009, the remaining pipeline construction must occur during the summer and fall of 2008.

Second, as a general practice, pipeline construction is done in a linear fashion.  "[I]f [Plaintiff] is unable to begin [p]ipeline construction prior to the determination of just compensation, it will be forced to repeatedly mobilize, demobilize, and remobilize its contractors, equipment, and materials around each property for which compensation has not been finalized."  *Id.*, Ex. 1 (Mordan Decl. ¶ 9).  Such a process is not only inefficient but would dramatically increase construction cost, significantly delay construction and likely threaten Plaintiff's compliance with the FERC deadline.

*Id.*

Third, Plaintiff has selected a pipeline contractor. In accordance with the contract, Plaintiff is required to provide the pipeline contractor with access to the right-of-way for the pipeline across all affected properties by June of 2008. If Plaintiff is unable to comply with these terms, Plaintiff is required to pay a penalty. "Further, if the [pipeline] contractor is unable to achieve the contractual completion dates as a result of delay due to lack of possession of the easements, there will be further financial ramifications for [Plaintiff]." *Id.*, Ex. 1 (Mordan Decl. ¶ 11).

Finally, separate hearings on compensation will be required for each of the many tracts of property Plaintiff seeks to condemn, and scheduling and conducting those hearings will take an extended period of time. *See East Tennessee*, 361 F.3d at 828. In *East Tennessee* the Fourth Circuit concluded that the district court's finding that "the Patriot Project would suffer 'undue delay' and that this delay would cause 'significant financial harm' both to [the East Tennessee Natural Gas Company] and some of its putative customers" was sufficient to show a likelihood of irreparable harm if immediate possession was not granted, *i.e.*, without a preliminary injunction. *Id.* at 828-29. In issuing the certificates of public convenience and necessity, FERC mandated that the construction of the facilities shall be completed within three years or by June of 2009. *See* FERC Order, at 73 (¶ H). This deadline underscores, without immediate possession of the easements, the significant undue expense and delay set forth in Plaintiff's evidence. The Court thus finds there is a likelihood of irreparable harm to Plaintiff if immediate possession is not granted.

    2.    *The likelihood of harm to the landowner.*

Ms. Jackson argues she is harmed by the uncertainty of the risks associated with another 36" diameter pipeline installed on her property including the negative health consequences to

13

landowners due to long term exposure to gas.

> Gas is dangerous, but it has no odor.  Because of the danger of gas, the odorant is added at the distribution points to help consumers detect leaks. . . .The effects of the smallest incident with the Dominion pipeline and surrounding areas would be devastating. . . . Frequent fly overs by helicopter to inspect the ground surface is one of the methods used to detect leaks. . . . The inspections must be done, but can be very high risk for individuals residing on the property.

Def.'s Opp'n, at 10-11.

Ms. Jackson discloses that she and other relatives plan to move to the property to retire. These relatives are older, have health issues such as high blood pressure and heart disease, and the inspections conducted to insure no gas leaks will be very upsetting to these individuals. Additionally, Ms. Jackson asserts her property has historical value.  "[T]he historical house that was destroyed by fire in August 2004 will be restored as one of the few remaining properties in the state of Maryland that actually demonstrate how some African Americans survived the depression[.]" *Id.* at 13.

Ms. Jackson raised these same concerns in her April 12, 2005 letter to FERC.  Before granting Plaintiff the certificate for the pipeline, FERC presumably considered risks to the landowners as well as any potential negative health consequences.  It is noteworthy that an existing 36" diameter pipeline is on Ms. Jackson's property and she presents no evidence of risks to prior or current property owners.  Furthermore, Ms. Jackson is not the only landowner who will have a second 36" diameter pipeline installed on her property.  "75 percent of the new pipeline's length will parallel the existing Cove Point Pipeline. . . ."  FERC Order, at 51 (¶ 129).  Second, although Ms. Jackson considers her property, and especially the destroyed home, historical, this issue was apparently considered by FERC resulting in no modification to the pipeline route across Ms.

Jackson's property.

Ms. Jackson raises several allegations about Plaintiff's conduct before FERC issued the certificate for the pipeline.  Plaintiff initiated a suit in state court after Ms. Jackson refused to allow Plaintiff to enter Ms. Jackson's property to survey and appraise the property for the proposed pipeline expansion.  As both Plaintiff and Ms. Jackson acknowledge, the decision of the Circuit Court of Charles County in favor of Plaintiff has been appealed to and is presently pending before the Maryland Court of Special Appeals.  *See* Def.'s Opp'n, at 6; Pl.'s Reply, at 3.  The prior state court proceeding and the pending appeal are not relevant to the issue of whether Plaintiff should receive immediate possession of the easements.

Finally, Ms. Jackson claims she will be financially harmed if the Court grants partial summary judgment to Plaintiff and allow immediate possession of the easements.

> Dominion's offer for a perpetual easement amounts to approximately $1.65 a month over the next fifty years.  It is unreasonable.  The land to be impacted is approximately 11.5 to 19 acres instead of the 1.9 acres calculated by Dominion.  They want to cut through the center of a 49.55 acre parcel which would impact a lot of land.  I cannot afford to subsidize Dominion.

Def.'s Opp'n, at 10.

Having reviewed the August 10, 2005 plat depicting the existing pipeline easement, the new pipeline easement and the access road for Ms. Jackson's property (Paper No. 10, Ex. 5, at 5), Ms. Jackson's assertion that Plaintiff wants to cut through the center of the 49.55 acre parcel is not a mischaracterization.  Plaintiff claims the proposed access road affects 1.1866 acres only.  *See* Compl. ¶ 14(a).  The impact of this proposed access road however appears more significant as Ms. Jackson contends.

In authorizing the pipeline expansion project, FERC was aware that some landowners would

be affected. FERC nonetheless determined "there should be *de minimis* economic impact on landowners since 75 percent of the new pipeline's length will parallel the existing Cove Point Pipeline and the remaining 25 percent of the new pipeline route will deviate from existing pipeline route in order to minimize the environmental and landowner impacts." FERC Order, at 51 (¶ 129). Based on the Court's review, although the new pipeline easement (TL-532) will parallel the existing pipeline easement (TL-522), there does not appear to be an access road as part of the existing pipeline (TL-522) on Ms. Jackson's property. The economic impact of the proposed access road, based on the August 10, 2005 plat, appears greater than 1.1866 acres only and further appears to be more than *de minimis*. The economic impact of the proposed access road therefore *must* be reassessed.

What is apparent from Mr. Sommerville's unopposed declaration and Ms. Jackson's Opposition is Ms. Jackson's dissatisfaction with the amount of compensation Plaintiff offered. "[T]he Constitution 'does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed.'" *East Tennessee*, 361 F.3d at 824 (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890)). Based on the evidence presented to this Court, the harm to Ms. Jackson is not irreparable but rather is compensable. That harm therefore is outweighed by Plaintiff's immediate need for the easements.

3.    *Plaintiff will succeed on the merits.*

The Court has found that Plaintiff, having obtained a certificate of public convenience and necessity from FERC, is authorized to condemn the property. Plaintiff's success on the merits is established.

16

4.      *The public interest.*

The Fourth Circuit has recognized the substantial public interest involved in the need for

natural gas supply.  *East Tennessee*, 361 F.3d at 830.  Here, as in that case, FERC has evaluated the

need and concluded the pipeline project is required by public convenience and necessity.  *Id.*  In this

case, FERC explained how the project serves the public interest.

> Expansion of the Cove Point Pipeline facilities . . .will make
> available gas supplies which would otherwise be unavailable,
> providing shippers enhanced access to firm natural gas storage
> capabilities and to additional natural gas markets throughout the
> northern and eastern United States.  By this proposal, new gas
> supplies will be delivered to where they are needed in the Mid-
> Atlantic and northeastern United States.  The project will bring new
> gas supplies into the heart of the market area by providing new gas
> sources for the shippers on Dominion, Transco and Columbia
> pipeline systems, which serve most of the major eastern United States
> markets and where the demand for natural gas is growing.  In
> addition, LNG is expected to play a vital role in meeting the
> increased demands for natural gas from all consuming sectors.  The
> growing importance of LNG is evidenced by INGAA's[11] July 2004
> study which found that a delay as short as two years in the
> construction[] of gas pipelines, storage facilities, and LNG import
> terminals will cost the United States gas consumers more than $200
> billion.

FERC Order, at 50-51 (¶ 126).

To assure that these needs are timely met, FERC has ordered Plaintiff to complete the project

by June 15, 2009.  No evidence has been presented contradicting that the necessity of this project

is to serve the public interest.

---

[11] Interstate Natural Gas Association of America.

## CONCLUSION

Defendant Cloria A. Jackson failed to present any evidence, in accordance with Rule 56, which rebuts the declarations of Mr. Mordan and Mr. Sommerville.  No genuine issue of material fact has been presented.  Partial summary judgment in favor of Plaintiff and against the Defendant is appropriate.  Plaintiff has the right to condemn the property and has shown that a preliminary injunction granting immediate possession should issue.  An Order will be entered granting Plaintiff immediate possession of the easements[12] as described in the Complaint.  Immediate possession is contingent upon Plaintiff posting, with this Court, a bond in the amount of ***$11,264.00*** with corporate surety, representing Plaintiff's value of the easements plus the cost for timber.


Date:  __August 10, 2007__                    _____/s/_____
                                                Alexander Williams, Jr.
                                                United States District Judge

---

[12] By separate Order, this case will be referred to the Land Commissioners.  Re-examination of the economic impact of the proposed access road will be conducted by the Land Commissioners.